**LEWIS BRISBOIS BISGAARD & SMITH LLP**
CRAIG HOLDEN, SB# 174643
  E-Mail: Craig.Holden@lewisbrisbois.com
JULIAN K. QUATTLEBAUM, IV, SB# 330581
  E-Mail: Julian.Quattlebaum@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Ascentis Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ASCENTIS CORPORATION, a Delaware corporation,<br><br>   Plaintiff,<br><br> vs.<br><br>ARTHUR "TY" HALL, IV, an individual,<br><br>   Defendant. | Case No. 5:22-cv-01015-ODW-KK<br><br>**PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 14, 2022<br>Time: 1:30 p.m.<br>Crtrm.: First Street Courthouse 5D<br><br>Judge: Hon. Otis D. Wright, II<br><br>Trial Date: None Set |

4884-8123-8843.1

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF

**TABLE OF CONTENTS**

**Page**

I. Introduction. ........................................................................................................ 1

II. The Court should conclude that Ty is bound by the arbitration clause that GSS signed (and Ty also signed), because he is its alter ego. .................... 3

    A. California law should govern the alter ego analysis; Ty should be judicially estopped from arguing Florida law controls. .......................... 3

    B. Standards applicable to the California and Florida alter ego tests.......... 4

    C. Ty is GSS's alter ego: he used its assets for himself and his other entities in non-arm's-length transactions, leaving GSS insolvent .......... 6

        1. Ty dominated GSS; it had no separate will or existence.............. 6

        2. Ty disregarded GSS's legal formalities....................................... 9

        3. There is an inequitable result as a matter of law. ........................ 9

III. The Court should apply equitable estoppel to compel Hall to arbitrate. ........ 10

IV. The Court should issue an order to show cause to address Ty's perjury........ 12

V. Conclusion........................................................................................................ 12

4884-8123-8843.1

i

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Federal Cases**

*Aliya Medcare Fin., Ltd. Liab. Co. v. Nickell*,
    2015 U.S. Dist. Lexis 183172 (C.D. Cal. 2015) ................................................... 8

*Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*,
    2006 U.S. Dist. Lexis 95007 (C.D. Cal. 2006) ........................................... 11, 12

*Beaver v. Omni Hotels Mgmt. Corp.*,
    2021 U.S. Dist. Lexis 209429 (C.D. Cal. 2021) ................................................... 5

*Bock v. Washington*,
    333 F.4th 1139 (9th Cir. 2022) ............................................................................ 4

*Boon Glob. Ltd. v. U.S. Dist. Court*,
    923 F.3d 643 (9th Cir. 2019) ............................................................................... 8

*Carlson Prod., LLC v. Clapper*,
    2022 U.S. Dist. Lexis 130523 (N.D. Cal. 2022) ............................................. 1, 9

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ........................................................................... 10

*Compaq Computer Corp. v. Ergonome, Inc.*,
    387 F.3d 403 (5th Cir. 2004) ............................................................................. 12

*Depcom Power v. CSUN Solar, Inc.*,
    2019 U.S. Dist. Lexis 80567 (N.D. Cal. 2019) ................................................... 8

*Eckhardt v. U.S.*,
    2010 U.S. Dist. Lexis 142176 (S.D. Fla. 2010), *aff'd* 463 F. App'x
    852 (11th Cir. 2012) .............................................................................. 3, 6, 7, 9

*Eckhardt v. U.S.*,
    463 F. App'x 852 (11th Cir. 2012) ...................................................................... 5

*In re Energy Smart, Inc.*,
    381 B.R. 359 (Bankr. M.D. Fla. 2007) ............................................................... 4

*Falcon Ventures, LLC v. Haystack Vent. Int'l, LLC*,
    2017 U.S. Dist. LEXIS 225534 (C.D. Cal. 2017) ............................................. 11

*Flint CPS Inks N. Am. LLC v. Trend Offset Printing Servs.*,
    2020 U.S. Dist. Lexis 246548 (C.D. Cal. 2020) ................................................. 5

*Greenlight Sys., LLC v. Breckenfelder*,
    2021 U.S. Dist. Lexis 120288 (N.D. Cal. 2021) ................................................... 3

*Hansen v. LMB Mortg. Servs.*,
    1 F.4th 667 (9th Cir. 2021) ................................................................................... 3

*Hofer v. Emley*,
    2019 U.S. Dist. Lexis 161377 (N.D. Cal. 2019) ................................................. 11

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee
    (Compagnie des Bauxites)*,
    456 U.S. 694 (1982) ........................................................................................... 12

*Int'l Petroleum Prods. & Additive Co. v. Black Gold S.A.R.L.*,
    2021 U.S. Dist. Lexis. 251821 (N.D. Cal. 2021) ............................................... 10

*Klink v. ABC Phones of N.C., Inc.*,
    2021 U.S. Dist. Lexis 158042 (N.D. Cal. 2021) ................................................... 3

*Nucal Foods, Inc. v. Quality Egg LLC*,
    887 F. Supp. 2d 997 (E.D. Cal. 2012) .................................................................. 2

*Preto. Realty I, LLC v. McCravy (In re McCravy)*,
    2015 Bankr. Lexis 1955 (S.D. Fla. 2015) ............................................................. 6

*In re Sigma-Tech Sales, Inc.*,
    570 B.R. 408 (Bankr. S.D. Fla. 2017) ................................................................... 6

*Simpkins v. S. Wine & Spirits of Am., Inc.*,
    2010 U.S. Dist. Lexis 91971 (N.D. Cal. 2010) ..................................................... 4

*In re SK Foods, L.P.*,
    499 B.R. 809 (Bankr. E.D. Cal. 2013) .................................................................. 9

*Solomon v. Jacobson*,
    2016 U.S. Dist. Lexis 187741 (C.D. Cal. 2016) ................................................... 3

*Stewart v. Screen Gems-Emi Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) .................................................................... 8

*Swisher Hygiene Franchise Corp. v. Clawson*,
    2018 U.S. Dist. Lexis 228711 (D. Ariz. 2018) ................................................... 12

*Syscom Inc. v. Nakajima USA, Inc.*,
    2020 U.S. Dist. Lexis 20321 (C.D. Cal. 2020) ................................................ 4, 5

*TC Skyrocket, LLC v. Superskyrocket, LLC*,
  2008 U.S. Dist. Lexis 132413 (S.D. Cal. 2008) .................................................... 8

*Townsend v. Monster Bev. Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............................................................... 4

*TTT Foods Holding Co. Ltd. Liab. Co. v. Namm*,
  2017 U.S. Dist. Lexis 77402 (S.D. Fla. 2017) ................................................. 6, 9

*Verge Media Cos. v. Rober Tj*,
  2011 U.S. Dist. Lexis 169602 (C.D. Cal. 2011) ................................................ 11

*Vista v. USPLabs, LLC*,
  2014 U.S. Dist. Lexis 154817 (N.D. Cal. 2014) .................................................. 5

*Wehlage v. Empres Healthcare, Inc.*,
  821 F. Supp. 2d 1122 (N.D. Cal. 2011) ............................................................... 3

*Youngevity Int'l v. Smith*,
  2019 U.S. Dist. Lexis 39790 (S.D. Cal. 2019) ..................................................... 3

*Zhejiang Dushen Necktie Co. v. Blue Med., Inc.*,
  2017 U.S. Dist. Lexis 151210 (S.D. Fla. 2017) ................................................... 6

**State Cases**

*Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*,
  217 Cal. App. 4th 1096 (2013) ........................................................................ 1, 6

*Assoc. Vendors, Inc. v. Oakland Meat Co.*,
  210 Cal. App. 2d 825 (1962) .................................................................. 5, 7, 8, 9

*Baize v. Eastridge Cos., LLC*,
  142 Cal. App. 4th 293 (2006) ............................................................................. 7

*Butler America, LLC v. Aviation Assur. Co., LLC*,
  55 Cal. App. 5th 136 (2020) ............................................................................... 6

*Exigen Props. v. Genesys Telcoms. Labs., Inc.*,
  2016 Cal. Super. Lexis 10696 ........................................................................... 11

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ......................................................................................... 4

*McCombs v. Rudman*,
    197 Cal. App. 2d 46 (1961) ........................................................................................... 8

*NEC Elecs. Inc. v. Hurt*,
    208 Cal. App. 3d 772 (1989) ......................................................................................... 8

*Triyar Hosp. Mgmt., LLC v. WSI (II)-HWP, LLC*,
    57 Cal. App. 5th 636 (2020) ............................................................................... 2, 9, 10

**Statutes**

9 U.S.C. § 4 ............................................................................................................................. 3

28 U.S.C. § 1927 p. 11(b), 37 ............................................................................................... 12

Cal. Corp. Code § 17708.01 .................................................................................................... 3

**Other Authorities**

Acentis' *Motion to Compel Arbitration* ................................................................................. 1

*https://en.wikipedia.org/wiki/Yacht* ...................................................................................... 7

*Supra*, n. 1 .............................................................................................................................. 5

I.  **Introduction.**

This is Ascentis's supplemental brief on its alter ego and equitable estoppel arguments.[1] Ascentis claims California law governs the alter ego issue; Ty Hall ("Ty")[2] says Florida. The focus is the same either way.[3] The Court should find Ty is GSS's alter ego because he: (1) so dominated GSS that it had no separate identity; (2) used millions of GSS's dollars for his personal purposes; and, by doing so, (3) left GSS unable to meet its liabilities. Further details follow.

GSS's business was reselling Ascentis's software to government employers. (Compl., Doc. 1-1; Ex. A, ¶¶ 9, 102) Ascentis claims GSS breached the parties' contract by charging Ascentis commissions for selling a product GSS was not authorized to sell. (Compl., Doc. 1-1) Ascentis alleges Ty completed the scheme by doctoring invoices to Ascentis to cover up the improper charges, or to falsely state they were for authorized sales. (*Id.*, ¶¶ 1, 35-40) Ty knew about GSS's (and his own) wrongdoing: he solely controlled GSS, knew it was not authorized to sell the product, knew it was charging for the product, and sent the invoices at issue. (Ex. A, ¶¶ 5-7, 75) In 2021, Ascentis's internal audit revealed GSS had overcharged it millions of dollars. On May 5, 2021, Ascentis sent Ty/GSS a demand letter for more than $1.4 million. (*Id.*, ¶ 100) GSS cannot pay; Ty's left it insolvent.

Ascentis has been GSS's only customer and sole source of income since 2015. (*Id.*, ¶ 102) Ascentis paid GSS millions over the years. (*Id.*, ¶ 47) Yet on the

---

[1] Doc. 45 (Order re: Acentis' *Motion to Compel Arbitration* (Doc. 17, the "Motion")). Julian Quattlebaum's declaration (Ex. A) supports this brief.

[2] This brief uses the Motion's defined terms, except for clarity uses the Halls' first names ("Ty" and "Karen"). No disrespect is intended.

[3] *Compare Carlson Prod., LLC v. Clapper*, 2022 U.S. Dist. Lexis 130523, 6, n.1 (N.D. Cal. 2022) (three critical factors are: (1) commingling of assets; (2) disregard of corporate formalities as by non-arm's length transactions; and (3) inadequate capitalization) *and Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1109 (2013) (entity so dominated it "had no separate mind, will or existence of [its] own" (quotation omitted)) *with* Joint Stip. (Doc. 45), 11-12 (Ty: Florida factors are (1) shareholder domination/control, (2) fraudulent or improper use of corporate form; (3) causing injury to claimant.).

day Ty received Ascentis's $1.4 million demand, GSS's only asset was about $112,000 it had in the bank. (*Id.*, ¶¶ 47, 100) GSS was broke because Ty had used his total control over GSS to use its assets for his personal benefit. (*Id.*, *e.g.*, ¶¶ 41-42, 47, 94) Ty used GSS's resources to acquire and operate yachts, and pay the crew[4] – even though it was not a GSS expense. (*Id.*, ¶ 81)[5] Ty admits the resources were used for his personal boat trips and to fund a charter boat operation for another of his entities (Hall Family Ventures, LLC ("HFV")). (*Id.*, ¶¶ 12, 46, 59, 62-65; Clark Dec., Ex. B) GSS got nothing; Ty/his entities own the boats. (*Id.*, ¶¶ 52, 55)

Ty was getting all of GSS's assets one way or another. What money GSS had left over from Ty's spending on himself/his entities, Ty distributed to himself. (*Id.*, ¶ 96) Ty depleted GSS's funds by more than $3.5 million just between the boats and distributions alone. (*Id., e.g.,* ¶¶ 47, 94) His other personal charges range from Ritz and Waldorf Astoria resort club memberships, to eyebrow threading, to payments to a caretaker for a house in St. Helena he bought for his daughter to live in during culinary school. (*Id.*, ¶¶ 25, 44-45, 74) Ty did not reimburse GSS. (*Id.*, ¶ 37)

Ty was too busy using GSS's assets to consider whether he had left it with resources to meet its liabilities (he didn't). (*Id.*, ¶¶ 5-6, 95-97) Instead, Ty raided taxpayers' dollarscausing GSS to get SBA and PPP loans of about $175,000, then used some of it to pay Offit Ervin to represent him and GSS. (*Id.*, ¶¶ 47, 71)

Far from ensuring that GSS <u>could</u> meet its liabilities, Ty made sure it could <u>not</u>. GSS was already insolvent the day it got Ascentis's demand. (*Id.*, ¶¶ 47, 100). <u>The ***day after*** Ty got that demand</u>, he caused GSS to execute a *$1+ million* guaranty on a bank loan for a luxury RV he wanted.[6] (*Id.*, ¶ 16) Again, GSS got no benefit. HFV owns the RV. (*Id.*, ¶¶ 16-17) As it was, GSS's own financials reflect GSS's

---

[4] Ex. A, ¶¶ 42, 47, 51-53, 56, 58, 70.
[5] GSS's government clients could not receive gifts. Not even Christmas cards. (*Id.*, ¶ 80)
[6] GSS's potential liabilities are considered for undercapitalization. *Triyar Hosp. Mgmt., LLC v. WSI (II)-HWP, LLC*, 57 Cal. App. 5th 636, 642 (2020) (considering whether entity presently has "sufficient assets to meet its debts."); *Nucal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 997, 993 (E.D. Cal. 2012) (examining whether entity "currently underfunded or non-operational.").

4884-8123-8843.1

2

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF

cash balance at the end of September 2022 is **-$49,148.22**. Factoring GSS's potential liability to Ascentis or the bank, GSS is actually insolvent by more than $4 million. (*Id.*, ¶¶ 16, 47, 100) Ty has not made the alter ego finding a close call, even under Florida law. *Eckhardt v. U.S.*, 2010 U.S. Dist. Lexis 142176, 21-23 (S.D. Fla. 2010) (finding improper purpose and piercing veil on summary judgment where owner "depleted corporate funds for his own benefit while the corporation could not pay its tax debts"), *aff'd* 463 F. App'x 852 (11th Cir. 2012).

Finally, equitable estoppel is an additional ground to grant the Motion.

## II. The Court should conclude that Ty is bound by the arbitration clause that GSS signed (and Ty also signed), because he is its alter ego.

A summary judgment standard applies to the alter ego issue. *Hansen v. LMB Mortg. Servs.*, 1 F.4th 667, 670 (9th Cir. 2021). If there is a disputed issue of material fact, the next step is "for the [D]istrict [C]ourt to 'proceed summarily to [a bench] trial' on . . . whether [Ty] is bound by the arbitration agreement." *Id.* at 673 (quoting 9 U.S.C. § 4).[7]

### A. California law should govern the alter ego analysis; Ty should be judicially estopped from arguing Florida law controls.

GSS is a Florida limited liability company, so the internal affairs doctrine would call for application of Florida alter ego law. But the parties' contract contains a California choice of law clause. (Ex. A, ¶ 5 (2010 contract § 18.5)). "[T]he Ninth Circuit and California Supreme Court both have deferred to choice-of-law provisions before the internal affairs doctrine." *Youngevity Int'l v. Smith*, 2019 U.S. Dist. Lexis 39790, 10 (S.D. Cal. 2019); *Solomon v. Jacobson*, 2016 U.S. Dist. Lexis 187741, 13-14 (C.D. Cal. 2016) (same).[8] As such, California law should govern.

---

[7] Ty was required to request a jury by the time he filed his opposition, but did not. *Klink v. ABC Phones of N.C., Inc.*, 2021 U.S. Dist. Lexis 158042, 22 (N.D. Cal. 2021) (so noting).

[8] In candor, there are a line of contrary cases, starting with *Wehlage v. Empres Healthcare, Inc.*, 821 F. Supp. 2d 1122, 1127-28 (N.D. Cal. 2011). These cases examine whether the choice of law clause is collateral to the contract at issue. *E.g., Greenlight Sys., LLC v. Breckenfelder*, 2021 U.S. Dist. Lexis 120288, 48-49 (N.D. Cal. 2021) (applying Cal. Corp. Code § 17708.01).

But, the Court does not have to resolve the choice of law issue, for three reasons. First, Ty waived the argument. *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1036 (C.D. Cal. 2018) (failure to develop argument waives it). Prior to the Court's discovery order (Doc. 34), Ty made only passing reference to Florida law (Doc. 10, 25:4). He never disputed the Motion's argument or authorities that California law applies (Doc. 17, 19:10). And his briefing (Docs. 10, 18, 27) presents California alter ego authority, only. The Court should find he waived the argument.

Second, Ty should be judicially estopped from asserting Florida law because he previously obtained an order limiting discovery (Doc. 38) by advancing California law. *See* Joint. Stip. (Doc. 35) at 16-17 (Ty: Court "ordered discovery and briefing [Doc. 34] on the first of th[e alter ego] elements only: unity of interest."[9])). Ty should be estopped now because: (1) his Florida-law position is "clearly inconsistent" with his earlier one; (2) he "succeeded in persuading [the C]ourt to accept" that earlier position; and (3) he would "derive an unfair advantage" if he could now insist on proof of another factor or another state's test, having prevented discovery on anything but California's unity of interest factor. *Bock v. Washington*, 333 F.4th 1139, 1145 (9th Cir. 2022) (source of quotes).

Third, the Court need not resolve which states' law governs because the outcome is the same under each (*infra*, § II(B)). *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-109 (2006) (no "true conflict;" governmental interest test); *Simpkins v. S. Wine & Spirits of Am., Inc.*, 2010 U.S. Dist. Lexis 91971, 12-14 and n.2 (N.D. Cal. 2010) (same, *Nedlloyd* test).

**B.     Standards applicable to the California and Florida alter ego tests.**

Both states use factors as guides (*supra* n.1), but the focus is "that justice be done." *Syscom Inc. v. Nakajima USA, Inc.*, 2020 U.S. Dist. Lexis 20321, 11-12

---

[9] The "unity of interest" prong is a creature of California law, not Florida's. Ascentis is not aware of a case applying Florida's alter ego law that considers it. *See also* Joint Stip. (Doc. 45) 11-12 (Ty explains Florida alter ego test; does not identify unity of interest as a factor).

(C.D. Cal. 2020) (not a matter of counting factors for or against piercing); *In re Energy Smart, Inc.*, 381 B.R. 359, 379 (Bankr. M.D. Fla. 2007) (focus is prevenint injustice). And because the doctrine "is founded on equitable principles...[it does] not...depend upon prior decisions involving factual situations which appear to be similar.…" *Vista v. USPLabs, LLC*, 2014 U.S. Dist. Lexis 154817, 5-6 (N.D. Cal. 2014); *Syscom Inc.*, 2020 U.S. Dist. Lexis 20321 at 11-12 ("no litmus test;" will "vary according to the circumstances of each case"); *Eckhardt v. U.S.*, 463 F. App'x 852, 855 (11th Cir. 2012) ("heavily fact-specific").

California has a "laundry list" of factors to the unity of interest analysis. *Beaver v. Omni Hotels Mgmt. Corp.*, 2021 U.S. Dist. Lexis 209429, 6-7 (C.D. Cal. 2021) (citing *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-40 (1962));[10] *Flint CPS Inks N. Am. LLC v. Trend Offset Printing Servs.*, 2020 U.S. Dist. Lexis 246548, 12 (C.D. Cal. 2020) (list of factors "non-exclusive."). Courts have identified three factors as "especially critical" – commingling, disregard of corporate formalities, and inadequate capitalization. *Supra*, n.1.

Florida permits an alter ego finding where: "(1) the shareholder dominated and controlled the corporation . . . [so the] corporation's independent existence was in fact non-existent . . . ; (2) the corporate form must have been used fraudulently **or** for an improper purpose; and (3) the fraudulent **or** improper use of the corporate

---

[10] Associated *Vendors* factors include: "Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses … the treatment by an individual of the assets of the corporation as his own … and the confusion of the records of the separate entities … the identification of the equitable owners thereof with the domination and control of the two entities … the employment of the same employees and/or attorney … the failure to adequately capitalize a corporation; the total absence of corporate assets and undercapitalization … the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation … [the] concealment of personal business activities … the disregard of legal formalities and the failure to maintain arm's length relationships among related entities … the use of the corporate entity to procure labor, services or merchandise for another person or entity … the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in"other. 210 Cal. App. 2d at 838-40 (cleaned up).

4884-8123-8843.1

5

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION;  P's & A's IN SUPPORT THEREOF

form caused injury to the claimant." *Eckhardt*, 463 F. App'x at 855-56 (emphasis added). Regarding the third factor, "Florida law does not require a party to prove fraud to pierce the corporate veil." *Zhejiang Dushen Necktie Co. v. Blue Med., Inc.*, 2017 U.S. Dist. Lexis 151210, 8 (S.D. Fla. 2017). Instead, Ty's use of GSS's "funds . . . to pay [his] personal expenses" is "particularly relevant" to showing he so "dominates his organization as in reality to negate its separate identity . . . ." *Eckhardt*, 2010 U.S. Dist. Lexis 142176 at 21. That use establishes "improper conduct" for the second and third factors. *In re Sigma-Tech Sales, Inc.*, 570 B.R. 408, 417 (Bankr. S.D. Fla. 2017) (improper conduct includes "divert[ing] assets and revenue" and using corporate funds to "continue supporting [the owners'] personal lifestyle."). Causation is established for the third factor where Ty's improper use of GSS's funds "would prevent [a] creditor from collecting a debt." *TTT Foods Holding Co. Ltd. Liab. Co. v. Namm*, 2017 U.S. Dist. Lexis 77402, 28 (S.D. Fla. 2017); *Preto. Realty I, LLC v. McCravy (In re McCravy)*, 2015 Bankr. Lexis 1955, 21-22 (S.D. Fla. 2015)).[11]

### C. Ty is GSS's alter ego: he used its assets for himself and his other entities in non-arm's-length transactions, leaving GSS insolvent

#### 1. Ty dominated GSS; it had no separate will or existence

Again, both states' first factor looks at whether Ty so dominated GSS that it lacked a separate existence. As above, this can be established through proof of Ty's personal use of GSS's assets, diversion to other entities' use, or commingling. *Toho-Towa Co., Ltd.*, 217 Cal. App. 4th 1096, 1109 (2013) (factor established where entity "but a business conduit for its principal." (quotation omitted)); *Eckhardt*, 2010 U.S. Dist. Lexis 142176 at 21 (domination where "corporate funds were used to pay the individual's personal expenses").[12]

---

[11] *Accord* (debtor's valuable asset removed; "inarguably harmed PRIP, rendering it unable to collect on its debts . . . satisfying the third and final prong of the veil piercing standard.").

[12] *Compare Butler America, LLC v. Aviation Assur. Co., LLC*, 55 Cal. App. 5th 136, 146 (2020) (footnote continued)

The decision in *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* is particularly instructive. 222 Cal. App. 4th 811, 814-16 (2013) (affirming unity of interest finding based on trial court's reasoning). In *Relentless*, a married couple (the Fultons) were "the sole officers, members, shareholders, owners and operators of the business entities." *Id.*[13] "The businesses [we]re operated in the Fultons' personal residence." *Id.*[14] "Money [was] freely transferred from the businesses to the Fultons." *Id.*[15] And although some corporate formalities were followed, other evidence showed that "[c]orporate entities are used to procure labor and services for the benefit of the Fultons and their other businesses . . . ." *Id.*[16] This was "substantial evidence that the separate personalities of the business entities and the individuals no longer exist." *Id.* at 814. The similar facts here establish GSS's "sham corporate veil."

Ty testified that he used GSS's assets, credit card, payroll, and QuickBooks programs to operate his other business entities because it was "convenient and less expensive." *See* Ex. A, ¶ 29-35; *Assoc. Vendors*, 210 Cal. App. 2d at 840 ("the use of the corporate entity to procure labor, services or merchandise for another person or entity"). That included using millions in GSS's resources for charges associated with the acquisition and operation of yachts for himself personally and his charter boat service. *See* Ex. A, ¶¶ 42, 46-54, 56, 58-59. Ty even had GSS keep fake employees on its payroll, who were actually crew for his personal yachts[17] and charter trips. As part of the boat captain's compensation, Ty let him use GSS's

---

(owner/other entities properly added to judgment based on alter ego doctrine; defendant owned and controlled all entities, disregarded formalities for keeping entities separate; and entities used same office, shared employees, and commingled funds).

[13] Ex. A, ¶¶ 10-11, 107 (Ty and Karen jointly own GSS, and are the only members/officers of the other entities).

[14] Ex. A, ¶ 108; *compare Baize v. Eastridge Cos., LLC*, 142 Cal. App. 4th 293, 299, 303-04 (2006) (piercing veil; noting common ownership, shared employees, and shared offices).

[15] *E.g.*, Ex. A, ¶¶ 43, 41, 58, 83.

[16] *E.g.,* Ex. A, ¶¶ 12, 46-47, 50, 77, 81.

[17] *See* https://en.wikipedia.org/wiki/Yacht (defining yacht as a boat over 33-40ft long).

4884-8123-8843.1

7

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF

credit card. *Id.*, ¶¶ 60-64, 67, 69-70.[18] GSS's former employee of 10+ years could not even *think* of a GSS business purpose to be involved in such transactions. *Id.*, ¶ 81; *Stewart v. Screen Gems-Emi Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (relevant that "related companies transfer assets among themselves for no ascertainable reason."); *Boon Glob. Ltd. v. U.S. Dist. Court*, 923 F.3d 643, 653-54 (9th Cir. 2019) ("free transfer of company assets" would "normally be [a] sign[] of a sham corporate veil."). And though her job entailed managing GSS's QuickBooks, neither she (nor Ty) could explain the boat-related transactions on GSS's books.[19] *Id.*, ¶¶ 20, 56-57. GSS also failed to keep adequate records. *Id.*, ¶¶ 20-21.[20] Ty's use of GSS's assets for himself/his other entities did not end there. He used GSS's funds to pay for everything from luxury vacation clubs to eyebrow threading to a caretaker for the house he provided for his daughter in California's wine country. *See* Ex. A, ¶¶ 25, 44-45, 74.[21] In fact, Ty so dominates GSS that GSS described itself as "his company." *See* Ex. A, ¶ 109; *cf. McCombs v. Rudman*, 197 Cal. App. 2d 46, 50 (1961) (alter ego; Court noted owner referred to company as "we"). This evidence establishes the first factor in both jurisdictions' tests (domination/commingling) as

---

[18] It appears Ty even helped one crew member falsify income to dupe banks. *See* Ex. A, ¶¶ 62-68.
[19] *Compare Assoc. Vendors*, 210 Cal. App. 2d at 838 (factors include "failure to maintain . . . adequate corporate records, and the confusion of the records of the separate entities").
[20] *TC Skyrocket, LLC v. Superskyrocket, LLC*, 2008 U.S. Dist. Lexis 132413, 8-9 (S.D. Cal. 2008) (commingling evidence included "use[ of] company resources . . . [for] toys, multiple trips to beauty sales, and a Costco membership;" and payments to another entity the husband and wife owned "for unspecified purposes;" Court noted the husband and wife members "failed to maintain the necessary records to distinguish the business use from personal use."); *NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 776-78 (1989) (Court affirmed alter ego finding but reversed on other grounds; alter ego evidence was: "Ph also paid insurance, berthing fees, maintenance and fuel expenses for a boat owned by Hurt."). The Court can assume that the missing records would not be helpful for Ty. *See Depcom Power v. CSUN Solar, Inc.*, 2019 U.S. Dist. Lexis 80567, 12-14 (N.D. Cal. 2019) (party opposed alter ego finding with declaration testimony, although "objective evidence could conclusively resolve some of the[] disputes;" although they were "uniquely positioned to provide this evidence" they did not; so the "Court accord[ed] minimal weight" to the declaration testimony).
[21] *Compare Aliya Medcare Fin., Ltd. Liab. Co. v. Nickell*, 2015 U.S. Dist. Lexis 183172, 69-70 (C.D. Cal. 2015) (unity of interest/commingling shown, in part, by fact that "the timing of CTB's transfers of assets to Aliya was such that Nickell could have been using the funds to finance a personal investment").

4884-8123-8843.1

8

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF

well as the "improper use" to prove the second and third factors under Florida law.

### 2. Ty disregarded GSS's legal formalities.

The evidence above of commingling and non-arm's-length transactions also establishes this factor. *Triyar Hosp. Mgmt., LLC*, 57 Cal. App. 5th at 642 (fact that LLC's members "could freely transfer funds among their legal entities and commingle" them with their or the entities' funds "to accomplish whatever purpose they wish" was evidence supporting findings of failure to regard legal formalities, maintain arm's-length relationships among their entities, manipulation of assets, and commingling). Additional evidence is the fact that Ty failed to protect GSS's existence. The Florida Secretary of State administratively dissolved GSS after it did not submit an annual report in 2015. *See* Ex. A, ¶ 28. And GSS suffered a tax lien after it failed to pay employment taxes. *Id.*, ¶ 27; *Carlson Produce, LLC v. Clapper*, 2022 U.S. Dist. Lexis 130523, 7 (N.D. Cal. 2022) (disregard of corporate formalities where "corporate status as 'FTB Forfeited'" and entity was behind on its taxes).

### 3. There is an inequitable result as a matter of law.

The fact that Ty's raids on GSS's assets have left it a judgment-proof shell establishes this factor in both jurisdictions. *Relentless Air Racing, LLC*, 222 Cal. App. 4th at 813 ("Airborne is insolvent" so "this is an inequitable result as a matter of law."); *Eckhardt*, 2010 U.S. Dist. Lexis 142176 at 23 (personal use of assets when entity could not pay debts); *TTT Foods Holding Co.*, 2017 U.S. Dist. Lexis 77402 at 28 (personal use of assets leaving entity insolvent establishes causation).

Again, Ty did not make this a close call. He used GSS's assets to acquire expensive boats and RVs that he or his entities now own (Ex. A, ¶ 55), and he used GSS to operate his other businesses for his profit. GSS has nothing to show for Ty's use of its assets – other than a $300,000 loss on the sale of a boat (*id.*, ¶ 52) – since Ty/his entities now own them. *See id.*, ¶¶ 52, 55, 71;[22] *Assoc. Vendors*, 210 Cal.

---

[22] *Accord In re SK Foods, L.P.*, 499 B.R. 809, 841 (Bankr. E.D. Cal. 2013) (inequitable where (footnote continued)

App. 2d at 840 (factors include "diversion of assets . . . by or to a stockholder or other . . . entity" and "the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another."). Ty so drained GSS's resources that he has had to infuse money to "keep it operational." *See* Ex. A, ¶¶ 90-91. Even when GSS finally got money from another source (*i.e.*, taxpayer loans), Ty immediately dissipated it on GSS's *and his own* legal expenses on his counsel in this case. He simply does not consider whether GSS has assets to meet its liabilities. *Id.*, ¶¶ 5-6, 37, 47, 71; *Int'l Petroleum Prods. & Additive Co. v. Black Gold S.A.R.L.*, 2021 U.S. Dist. Lexis. 251821, 6 (N.D. Cal. 2021) (same counsel represents entity and owners both in arbitration and Court). *Triyar*'s conclusion is apt on this fact pattern. There, the Court explained that a LLC member's ability to "freely transfer funds among [his] legal entities and commingle" those assets "to accomplish whatever purpose they wish" does "not allow the [owner] . . . to [let the LLC] be[] undercapitalized when its shareholders intend to avoid liability." 57 Cal. App. 5th at 638, 642. Yet that is just what Ty did here – including by heaping *another* $1 million in liability on GSS *the very day after* he received Ascentis's demand letter.

### III. The Court should apply equitable estoppel to compel Hall to arbitrate.

Ty should be equitably estopped from denying he must arbitrate because: (1) he knowingly exploited the contract; (2) his conduct is intertwined with GSS's; (3) he got a direct benefit from the parties' contract; and (4) of other considerations.[23]

In *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101-02 (9th Cir. 2006), the Court explained that a party "knowingly exploits" an agreement by taking advantage of its terms, or by pursuing legal action to enforce it. The test was not met in that case because Comer was merely a passive plan participant. By contrast here, Ty is the sole actor for GSS. He actively sought assurance that Ascentis would assume the

---

owners "siphon off" assets and give "nothing . . . in return" because "it harms the interests of the corporation and its creditors.").
[23] Ascentis stands by the grounds in its Motion, but will not repeat them.

4884-8123-8843.1

10

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF

contract from its predecessor (Ex. A, ¶ 5), then he caused GSS to assert a $10+ million arbitration demand against Ascentis based on the contract containing the arbitration clause. (*Id*., ¶¶ 8, 99) These facts call for Ty to be estopped. *Exigen Props. v. Genesys Telcoms. Labs., Inc.*, 2016 Cal. Super. Lexis 10696, 20 (the "lynchpin for equitable estoppel is . . . fairness."). Here, Ty has set up a situation of "heads I win, tails you lose": if GSS wins the arbitration, Ty gets the proceeds; if it loses, Ty loses nothing because he has left GSS a judgment-proof shell. *Compare Verge Media Cos. v. Rober Tj*, 2011 U.S. Dist. Lexis 169602, 41 (C.D. Cal. 2011) (estoppel can apply to nonsignatory who had no obligations under contract but reaped benefits). These same facts show Ty should be estopped based on his intertwined conduct. Ty is the sole actor for GSS, and (as in the introduction) he is integral in perpetrating the scheme that harmed Ascentis – the same dispute that is in issue in the arbitration. *Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 2006 U.S. Dist. Lexis 95007, 43-46 (C.D. Cal. 2006) (estoppel based on intertwined claim; party could not use contract as sword and shield; efficiency of arbitration thwarted if nonsignatory not in it).

Ty should also be estopped because he got a direct benefit from the contract. There are direct benefits where the nonsignatory was involved in formation of the contract and obtained an advantage from it. *Verge Media Cos.*, 2011 U.S. Dist. Lexis 169402 at 43; *accord Hofer v. Emley*, 2019 U.S. Dist. Lexis 161377, 16-17 (N.D. Cal. 2019) (passenger bound by arbitration clause in car rental contract due to direct benefit; nonsignatory passenger encouraged signatory driver to rent car, and got the benefit he wanted, *i.e.*, a ride to spend holiday with family). Here, Ty wanted the 2015 contract, He claims he personally gave a "major component" of the consideration for it (non-compete), he actively sought to keep it in force, and he got the very benefit he wanted – millions in profits for himself. *See* Ex. A, ¶¶ 5, 59.[24]

---

[24] *Accord Falcon Ventures, LLC v. Haystack Vent. Int'l, LLC*, 2017 U.S. Dist. LEXIS 225534, 19 (footnote continued)

4884-8123-8843.1

11

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF

Finally, "estoppel is equitable" so the Court "has considerable discretion to select a remedy that is appropriate . . . ." *Amisil Holdings, Ltd.*, 2006 U.S. Dist. Lexis 95007 at 45 (quotation omitted). The Court should order Ty to arbitrate so that it does not reward his perjury, detailed below.

### IV. The Court should issue an order to show cause to address Ty's perjury.

Ty and his counsel should be sanctioned pursuant to Fed. R. Civ. P. 11(b), 37, 28 U.S.C. § 1927, and the Court's inherent power.[25] The core of Ty's opposition was his declaration testimony that he is an "employee and minority member" of GSS, and that GSS "is an independent software sales company which, during the relevant timeframe, had its own employees (besides myself) . . . ." (Doc. 10-2, ¶¶ 5, 6, 13) Ty has since testified that all of those statements, and more, were false. (Ex. A, ¶¶ 104-108, 110). Rather that correct the false testimony, Ty and his counsel have compounded the problem. Despite knowing about the false statements for a month or more, they did not timely correct them, forcing Ascentis to prove their falsity in discovery. (*Id.*, ¶¶ 16, 106-108) Instead, they waited until after Ty's deposition ended, then submitted a new declaration that *repeats the perjured claim that Ty is a current employee*, and an errata which misleads the Court about the materiality of Ty's perjured statements. *Compare* Docs. 55, 56 (declaration and errata which claims changes are immaterial)[26] *with* Resp. (Doc. 27) 19:20 *and* Dec. (Doc. 10-2), ¶ 5 (using false statements as core of opposition).

### V. Conclusion.

Based on the foregoing, the Court should grant the Motion and award

---

(C.D. Cal. 2017) (owner "cannot seriously contend that he received no direct personal benefit" from contract he signed in entity's name); Mot. (Doc. 17 at 11 (*Binder*)), Reply (Doc. 30 at 12 (*All Metro*)); Ex. A, ¶ 101 (improper instructions from counsel not to answer questions about benefits).

[25] *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee (Compagnie des Bauxites)*, 456 U.S. 694, 707 (1982) (affirming sanctions for disobedience to jurisdictional discovery order); *accord Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004) (affirming discovery sanction order that determined officer was alter ego of entity).

[26] *Swisher Hygiene Franchise Corp. v. Clawson*, 2018 U.S. Dist. Lexis 228711, 25 (D. Ariz. 2018) (finding similar conduct to be misuse of errata procedure).

Ascentis its fees based on the rules and statutes above, and per the parties' contract.

DATED: October 21, 2022

CRAIG HOLDEN
JULIAN K. QUATTLEBAUM, IV
LEWIS BRISBOIS BISGAARD & SMITH LLP


By: ___*/s/ Craig Holden*___
    Craig Holden
    Attorneys for Plaintiff Ascentis
    Corporation

4884-8123-8843.1

13

PLAINTIFF ASCENTIS CORPORATION'S SUPPLEMENTAL BRIEF RE: ITS NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION; P's & A's IN SUPPORT THEREOF